# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39421**

———————————

**UNITED STATES**
*Appellee*

**v.**

**David W. BRUNO**
Second Lieutenant (O-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 22 March 2019

———————————

*Military Judge:* Christina M. Jimenez.

*Approved sentence:* Dismissal, confinement for 75 days, and forfeiture of all pay and allowances. Sentence adjudged 22 December 2017 by GCM convened at Barksdale Air Force Base, Louisiana.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, JOHNSON, and DENNIS, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Chief Judge MAYBERRY and Judge DENNIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

JOHNSON, Senior Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of two specifications of wrongful use of methamphetamine in violation of Article 112a, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 912a. The military judge sentenced Appellant to a dismissal, confinement for 75 days, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence.

Appellant raises three issues on appeal: (1) whether the military judge properly suppressed Appellant's urine sample;[1] (2) whether Appellant's convictions are legally and factually sufficient; and (3) whether the military judge abused her discretion by admitting certain sentencing evidence.[2] We find no prejudicial error and we affirm the findings and sentence.

## I. BACKGROUND

Appellant was a weather officer stationed at Barksdale Air Force Base (AFB), Louisiana. On 2 August 2016 Appellant was randomly selected to provide a urine sample for drug testing. This sample was tested at the Air Force Drug Testing Laboratory (AFDTL) with a positive result for the presence of two metabolites of methamphetamine. After this result was reported back to Barksdale AFB, Appellant provided a second urine sample on 23 August 2016 in accordance with a urinalysis re-inspection policy memorandum signed by the 2d Bomb Wing commander. This policy memorandum provided, *inter alia*, that all military personnel "tested under the authority of the Barksdale AFB Drug Demand Reduction Program[ ][w]hose urine sample has a positive test result for the presence of any controlled substance, the presence of which is without legal justification or authorization," were "required to submit to follow-up urinalysis testing . . . as a re-inspection."[3] Appellant's 23 August 2016 urine sample also tested positive at the AFDTL for the same two metabolites of methamphetamine.

Appellant was charged with two specifications of wrongful use of methamphetamine. At the initial session of Appellant's court-martial held 8–9 March 2017, the Defense moved to suppress the results of Appellant's second urine test on the grounds that it was an illegal search rather than a proper re-inspection conducted in accordance with the 2d Bomb Wing commander's policy. The military judge granted the defense motion to suppress. The Government made a timely appeal of the military judge's ruling to this court pursuant to Article 62, UCMJ, 10 U.S.C. § 862. After receiving pleadings from the parties

---

[1] In part, Appellant raises this issue personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] Appellant personally raises the second and third issues pursuant to *Grostefon*, 12 M.J. 431.

[3] *See generally United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990).

and hearing oral argument, on 23 August 2017 this court granted the Government's appeal and reversed the military judge's ruling. *United States v. Bruno*, Misc. Dkt. 2017–03, 2017 CCA LEXIS 573, at *23 (A.F. Ct. Crim. App. 23 Aug. 2017) (unpub. op.), *rev. denied*, 77 M.J. 107 (C.A.A.F. 2017).

Appellant's trial reconvened on 21 December 2017. Contrary to Appellant's pleas, the military judge found Appellant guilty of both specifications.

## II. DISCUSSION

### A. Suppression of Appellant's Second Urine Sample

On appeal, Appellant raises the issue that was the subject of the Government's Article 62, UCMJ, appeal and this court's 23 August 2017 opinion. Essentially, Appellant argues the military judge properly suppressed his second urinalysis result because the collection and testing were not accomplished in compliance with the 2d Bomb Wing commander's policy memorandum, and therefore the test was not a valid re-inspection in accordance with *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990). Appellant's counsel "recognizes and understands" this court's prior decision on this issue, but raises it in order to preserve it for appeal to the United States Court of Appeals for the Armed Forces. Appellant, in his personal capacity pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), contends that this court erred in its prior decision and implies this court should reverse its prior ruling, *stare decisis* notwithstanding. *See generally United States v. Quick*, 74 M.J. 332, 335–38 (C.A.A.F. 2015) (explaining the doctrine of *stare decisis*); *United States v. Tualla*, 52 M.J. 228, 231 (C.A.A.F. 2000) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) ("*Stare decisis* is a principle of decision making, not a rule, and need not be applied when the precedent at issue is 'unworkable or . . . badly reasoned.'"). We continue to adhere to the reasoning and holding of our prior decision, and this issue requires no further analysis here. *Bruno*, unpub. op.

### B. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2016); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence presented at trial. *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006) (citations omitted).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citation omitted); *see also United*

*States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. "The term reasonable doubt . . . does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

**2. Analysis**

The Government was required to prove beyond a reasonable doubt that: (1) Appellant used methamphetamine on the dates alleged;[4] and (2) the use was wrongful—that is, without legal justification or authorization. *See Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶ 37.b.(2), c.(5). Appellant contends the Government's evidence failed to do so. He points to the testimony of Dr. HN, an AFDTL lab certifying official (LCO) who testified for the Government as an expert in forensic toxicology, forensic chemistry, and AFDTL operations and procedures. Dr. HN acknowledged on cross-examination that "mistakes happen," that mistakes have occurred in the past in the collection and testing of urine samples sent to the AFDTL, and that certain other AFDTL LCOs had been decertified from performing particular tasks at various points in time. Appellant further notes the absence of testimony from any witness who observed Appellant using illegal drugs and Dr. HN's concession that Appellant's drug test results were consistent with either knowing or unknowing ingestion of methamphetamine.

Nevertheless, we find the Government introduced powerful evidence of Appellant's guilt. Most significantly, two separate samples of Appellant's urine collected three weeks apart tested positive for the same two metabolites of methamphetamine. Dr. HN testified that based on the detection window for

---

[4] Specification 1 alleged Appellant used methamphetamine between on or about 19 July 2016 and on or about 2 August 2016; Specification 2 alleged use between on or about 9 August 2016 and on or about 23 August 2016.

methamphetamine metabolites in the human body she was "very certain" these test results represent two different uses of methamphetamine. After reviewing the documentation associated with the test results, Dr. HN was also "very certain" each of Appellant's samples contained metabolites of methamphetamine. The individuals involved in observing, collecting, and shipping Appellant's urine samples testified to the security of the chain of custody. A properly-admitted urinalysis accompanied by expert testimony may "provide[ ] a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use, without testimony on the merits concerning physiological effects." *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001) (citation omitted). In Appellant's case, the two separate positive urinalysis tests accompanied by Dr. HN's testimony were compelling evidence that Appellant knowingly and wrongfully used methamphetamine on two occasions.

The Government introduced additional evidence to buttress the urinalysis results. Dr. HN testified that someone "coming down off of the methamphetamine – when you come down off a central nervous stimulant like that they might feel kind of tired and irritable." Appellant's supervisor, Captain (Capt) CVA, testified that in July 2016 Appellant learned his brother had been murdered; thereafter, Appellant sometimes seemed "tired and fatigued" and reported late for duty on multiple occasions. In particular, Appellant's training instructor at the weather squadron, AG, testified that on the morning of 2 August 2016—the day Appellant provided the first urine sample—Appellant reported for duty more than two hours late. Capt CVA testified that on 23 August 2016, after Appellant was interviewed by the Air Force Office of Special Investigations and provided the second urine sample, Appellant spontaneously told Capt CVA that "he knew he was going to pop positive again on the second test" because he "just took an old prescription." Colonel SZ, a doctor and medical review officer who reviewed Appellant's medical records, testified that Appellant had no medical prescription and no "valid medical reason" that would account for the presence of one of the metabolites of methamphetamine detected in his urine.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence was legally sufficient to support Appellant's convictions for wrongful use of methamphetamine beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Therefore we also find Appellant's convictions factually sufficient.

**C. Sentencing Evidence**

**1. Additional Background**

During sentencing proceedings the Defense objected to the introduction of three exhibits, Prosecution Exhibits 9, 11, and 12. Prosecution Exhibit 9 was Appellant's performance report, which contained no derogatory information. Prosecution Exhibit 11 was a May 2017 letter of counseling for being late reporting for duty and for wearing an ill-fitting uniform, accompanied by Appellant's written response. Prosecution Exhibit 12 consisted of two Air Force Forms 1058, *Unfavorable Information File Action* (Oct. 2012), dated July and October 2017, together with three letters of reprimand for failure to report for duty on time and Appellant's written response to each reprimand. The Defense objected to these exhibits on the basis that the Government had not provided notice of these documents until approximately one hour before they were offered. Trial counsel explained the Prosecution had received these documents only "a few days" earlier, but acknowledged the Government had failed to comply with the military judge's scheduling order due to an "oversight."

The military judge then asked trial defense counsel, "how much time do you think you'll need? The court is inclined to give you as much as you need." Trial defense counsel responded that "exclusion" rather than "more time" was "the only proper remedy." After trial counsel proposed that "time is the remedy," the following colloquy ensued:

> DC [Trial Defense Counsel]: The only thing I would add, Your Honor, is that in terms of prejudice, part of us receiving notice of these things are to be able to challenge not only the technicalities but the substantive allegations and what's said in these as well, and also to give [Appellant], to provide context or witnesses. We've not had adequate time to do this. As far as prejudice, we would just assert that that is not the case, and that there is prejudice, because we had not been afforded time to do all that. And asking us to do this tonight would not be adequate – would not be due process for [Appellant], just given the temporal considerations of – the government has had the benefit of this for over a year, as to one document, and months for the latest document.
>
> MJ [Military Judge]: Counsel, you bring up time. Are you requesting more time? And I mean more than tonight.
>
> [The defense counsel conferred with co-counsel.]
>
> DC: Your Honor, we're not asking for more time, no. We're just relying on our original objection and our original requested remedy.

MJ: Thank you, counsel. In light of the government's late discovery, the court is only inclined to grant the defense more time. As you're not requesting any greater time, are there any further objections to Prosecution Exhibits 9, 11, and 12 for identification?

DC: No, Your Honor.

### 2. Law

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). We also review a military judge's remedy for a discovery violation for an abuse of discretion. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015) (citing *United States v. Trimper*, 28 M.J. 460, 461–62 (C.M.A. 1989)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citing *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Rule for Courts-Martial (R.C.M.) 1001(b)(2) provides that during sentencing proceedings the Government may introduce from the accused's personnel records evidence of, *inter alia*, the character of the accused's prior service, including "evidence of any disciplinary actions." R.C.M. 701(a)(5)(A) provides that upon request by the Defense, trial counsel shall permit inspection of "such written material as will be presented by the prosecution at the presentencing proceedings."

### 3. Analysis

Appellant contends the Government's failure to provide earlier notice of these exhibits denied his trial defense counsel "an opportunity to investigate these documents and prepare a defense against them." We find the military judge did not abuse her discretion in admitting these documents.

Trial defense counsel's only objection to these documents was the Government's failure to provide timely notice. The Defense made no substantive objection to the evidence. The military judge advised trial defense counsel she would give the Defense as much time as it needed. This proposed remedy was not "clearly unreasonable" or "clearly erroneous" given the nature of the viola-

tion and the exhibits. Prosecution Exhibit 9 was a performance report that Appellant signed electronically in February 2017 and which contained no derogatory data; it should have been no surprise to the Defense, and in any event it was not prejudicial to Appellant. Prosecution Exhibits 11 and 12, although prejudicial, had also been previously served on Appellant and included his written responses to the counseling and reprimands. At trial, the Defense specifically declined the military judge's offer of more time to prepare in response to these documents. On appeal, Appellant fails to specify any investigative step, witness, evidence, or other countermeasure the Defense was denied the opportunity to pursue in response to the untimely notice of this otherwise proper evidence.

We do not condone the untimely disclosure of sentencing evidence. The military judge might have exercised her discretion to impose on the Government a harsher remedy such as exclusion of the exhibits. However, under these circumstances we find the military judge did not abuse her discretion by concluding that affording the Defense additional time to prepare would be a sufficient remedy, or by admitting the exhibits when the Defense declined the offer of additional time and failed to make any further objection.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court