UNITED STATES, Appellee

v.

Stanley BARNER, Sergeant First Class
U.S. Army, Appellant

No. 00-0431

Crim. App. No. 9701385

_____

United States Court of Appeals for the Armed Forces

Argued December 5, 2000

Decided November 16, 2001

BAKER, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE and EFFRON, JJ., and SULLIVAN, S.J.,
joined.  SULLIVAN, S.J., filed a concurring opinion.

Counsel

For Appellant: Captain Stephanie L. Haines (argued); Colonel
Adele H. Odegard, Lieutenant Colonel David A. Mayfield, and
Major Mary E. McCord (on brief); Major Jonathan F. Potter and
Major Kirsten V.C. Brunson.

For Appellee:  Captain Paul T. Cygnarowicz (argued); Lieutenant
Colonel Edith M. Rob and Major Anthony P. Nicastro (on brief).

Military Judge:  Gary W. Smith

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of violating a lawful general regulation (seven specifications), assault consummated by a battery, adultery, indecent assault (four specifications), and obstruction of justice (two specifications), in violation of Articles 92, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 928, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 4 years, total forfeitures, and reduction to grade E-1. The convening authority approved the sentence as adjudged, and the court below affirmed in a short-form, per curiam decision.

We granted review on the following issues, which relate only to the obstruction of justice offenses:[1]

---

[1] The two specifications stated that appellant

. . . did, at Fort Jackson, South Carolina, on or about 12 April 1996, wrongfully endeavor to alter the testimony of Private Qulandus S. Green as a victim by making comments designed to influence and deter the reporting of a crime; and

. . . did, at Fort Jackson, South Carolina, on or about 12 April 1996, wrongfully endeavor to alter the testimony of Private Luciana M. Mitchell as a witness by making comments designed to influence and deter the reporting of a crime.

2

I

WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT A FINDING OF GUILTY OF SPECIFICATIONS 4 AND 5 OF ADDITIONAL CHARGE V (OBSTRUCTION OF JUSTICE).


II

WHETHER SPECIFICATIONS 4 AND 5 OF ADDITIONAL CHARGE V MUST BE CONSOLIDATED AS ONE SPECIFICATION BECAUSE APPELLANT'S ALLEGED ACTS CONSTITUTED ONE VIOLATION OF A SINGLE PROVISION OF MILITARY LAW PROHIBITING OBSTRUCTION OF JUSTICE; CONSOLIDATION IS CONSISTENT WITH THIS COURT'S OPINION IN UNITED STATES V. GUERRERO, 28 MJ 223, (CMA 1989).

For the reasons set forth, we resolve both issues adversely to appellant and affirm.

FACTUAL BACKGROUND


Appellant was the senior drill sergeant in the 2nd platoon of Alpha Company (A CO), 1st Battalion, 61st Infantry Regiment (1/61) at Fort Jackson, South Carolina. Over the span of three training cycles from July 1995 until April 1996, appellant engaged in a variety of unlawful and inappropriate contact with female trainees under his supervision. [2] As a drill instructor, he was precluded by regulations from having personal relationships with the trainees. His misconduct went unreported until a trainee came forward and reported him to authorities.

---

[2] Appellant's conduct included consensual sexual intercourse with several of the trainees and assaults against others by touching them inappropriately.

Private (PVT) Qulandus Green was a trainee in the 1st platoon of appellant's company in March 1996. On the evening of April 11, 1996, after PVT Green concluded her Charge of Quarters (CQ) duties, appellant followed her into the female sleeping bay. He intentionally rubbed his hand across PVT Green's hair and breast. Upset, PVT Green rushed to the latrine, where she told PVT Luciana Mitchell of appellant's actions. PVT Green also reported the incident to her mother that evening during a telephone call. The next day, PVT Green and PVT Mitchell reported the incident to their drill instructor, Sergeant First Class (SFC) Randy Bell.

SFC Bell testified that while he was discussing the incident with the two Privates, appellant arrived, at which point Bell excused the Privates and sent them to the CQ lounge. He then informed appellant of the allegation made against him by Green and Mitchell. Upon hearing this, appellant asked Bell if he could speak with the two Privates, and Bell reluctantly allowed him to do so.

Green testified that when appellant met with her and Mitchell in the lounge, he apologized and implored her "not to tell." He also suggested that by pursuing her report, she would, in his words, be helping the "white man" who was "trying to destroy him." Bell's testimony, which is consistent with Green's, is that when he joined the meeting in the lounge, he

4

heard enough of the conversation to conclude that appellant "was trying to change the story." As for appellant's references to race, Bell characterized appellant's statements to Green as "us as blacks, had to stick together," because "the white [drill instructor] cadre were against the black cadre." Shortly after hearing this, Bell terminated the meeting between appellant and the two Privates and reported Green's allegation to the first sergeant of A CO.

Green also testified that about "two to three days later," appellant approached her in the breezeway and continued his efforts to dissuade her from pursuing her allegation. PVT Mitchell was apparently not present during this encounter. On this occasion, Green stated that, among other things, appellant told her, "I'll do anything, if you don't tell."

Mitchell testified to yet another encounter some time after the meeting in the CQ lounge wherein she and Green were called to appellant's office while they were on kitchen police duty. In a further attempt to dissuade Green, appellant again raised the specter of race by stating that "they wanted him out" because "they didn't want any blacks here." According to Mitchell, appellant then directed his attention to her and asked if she would be willing to "write a statement against Green," and indicated he could get other soldiers to say that Green was a liar.

Appellant's efforts were obviously unsuccessful and resulted in the two obstruction offenses of which he stands convicted.

ISSUE I

Appellant claims that the evidence is insufficient as a matter of law. The nature of such a claim requires us to examine the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Turner, 25 MJ 324 (CMA 1987). Further, in resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution. United States v. Rogers, 54 MJ 244, 246 (2000); United States v. Blocker, 32 MJ 281, 284 (CMA 1991).

Paragraph 96b, Part IV, Manual for Courts-Martial, United States (1995 ed.),[3] lists the elements of obstructing justice under Article 134 as follows:

(1)  That the accused wrongfully did a certain act;

(2)  That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

---

[3] This Manual provision is identical to the one in effect today.

6

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Appellant's claim is that the evidence is insufficient as to all of the elements of both offenses.

Appellant relies on United States v. Asfeld, 30 MJ 917 (ACMR 1990), and to a lesser extent, United States v. Gray, 28 MJ 858 (ACMR 1989), to support his contention that his statements were not wrongful because they were no more than an attempt to conceal his misconduct by limiting other people's knowledge of his illicit activities, and he did not request an affirmative act by the Privates, which would amount to an interference with or obstruction of the due administration of justice. He further argues that his conduct could only have been intended to forestall or preclude discovery of his offense, and since no official authority had taken an official act or initiated an inquiry, investigation, or other criminal proceeding against appellant, he could not have attempted to interfere, impede, or obstruct the due administration of justice.

In Asfeld, the appellant stood convicted of calling the prosecutrix and uttering indecencies over the telephone. During

the conversation in which the indecent language was communicated, the prosecutrix apparently recognized appellant's voice and threatened to report him. Appellant immediately said, "Don't report me." This statement formed the basis for the appellant's conviction of obstruction of justice. The Army Court found that the prosecutrix had no duty to report and obviously had not reported the offense, since the alleged obstruction had occurred contemporaneously with the communication of the indecent language. It also found that the appellant had promised no unlawful inducement. The court then made two significant holdings. First, it held that the appellant's statement, "Don't report me," did "not request an affirmative act by the prosecutrix which would amount to an interference with or obstruction of the due administration of justice" and, thus, was not wrongful. 30 MJ at 928. Secondly, it held that the "appellant's . . . conduct was intended only to forestall or preclude discovery of his offense, an intent which does not amount to an attempt to interfere, impede, or obstruct the 'due administration' of justice." Id.

In Gray, the appellant pled guilty to obstructing justice by advising one paramour "that she was not to discuss the couple's sexual relationship with anyone or they would both get into trouble." 28 MJ at 860. In setting aside the finding of guilty, that court held the statement was "no more than an

8

attempt to conceal his misconduct by limiting other people's knowledge of his illicit activities." Id. at 861. We need not address the correctness of the Army Court's holdings in these cases because we hold that appellant's case is readily distinguishable from them.

On the issue of wrongfulness, both Green and Mitchell testified that just prior to their first meeting with appellant in the lounge, they had reported the assault against Green to SFC Bell. Furthermore, Bell's testimony was that immediately following the trainees' report of the allegation to him, he informed appellant of the Privates' accusations. Notwithstanding this, appellant proceeded to meet with the trainees to dissuade Green from pursuing her complaint. The testimony of the three witnesses does not indicate that appellant denied the allegation, nor does it indicate he sought to prevent Green from pursuing a false report against him. Instead, appellant offered his apologies and then sought to dissuade her from pursuing the complaint.

One could reasonably conclude from the testimony that appellant realized he had committed an offense against Green, knew she had already reported it to someone of authority, and wanted to prevent her from further reporting what she had just told Bell. Acceding to appellant's request would at the very least have required her to disclaim or recant her report to

Bell. Thus, contrary to appellant's claim before this Court, the record contains evidence that rather than merely imploring Green not to tell, appellant's efforts were designed to have Green assert that her previous complaint to Bell was false. Of course, appellant knew this not to be the case.

Appellant's suggestion to Green that she should forgo reporting his criminal assault upon her for reasons related to race is also probative on the element of wrongfulness, as well as the element of conduct prejudicial to good order and discipline. Green's testimony concerning appellant's statements to her was as follows:

> He was begging me not to – you know, not to tell, because he was telling me, the white man don't want to see him get nowhere [sic], they want to see him go down; a black man had never came here and did – got as much rank as he got, they're trying to destroy him, "Don't do this to me." You know, he was trying to make it like something racial.

Based on this testimony, military court members could have concluded that an attempt on the part of a senior drill instructor to get the trainees to change their story through such an appeal was not only wrongful, but in the context of a basic training environment, prejudicial to good order and

discipline.

Appellant's claim that his conduct was not wrongful because he did not threaten or bribe the trainees is equally untenable. Appellant's statement to Green in the breezeway that "I'll do anything if you don't tell," suggests that appellant was willing to use his position as a senior drill instructor to see that Green received preferential treatment. Implicit in this statement by a drill instructor is the converse—that refusal to accede to his desire might invite more severe treatment than others might receive. Neither scenario was consistent with the duties of a senior drill instructor, and members could have so found.

With regard to Mitchell, appellant's request to her during the meeting in his office to "write a statement against Green" was made with the knowledge that Mitchell had accompanied Green during her initial report to Bell, and that she presumably supported Green's complaint.[4] His further suggestion to her that he could get "other statements from soldiers saying that Green was a liar" suggests that he wanted Mitchell to paint Green as a liar, and that he could assist her in so doing. However, as previously noted, appellant knew Green's allegation was true.

As indicated in the elements set out in paragraph 96b, the

---

[4] In fact, at this point, Mitchell had apparently already written a statement supporting Green's allegation.

11

Manual requires a wrongful act, that is, one done without legal justification or with some sinister purpose. See United States v. Jensen, 25 MJ 284, 288 (CMA 1987). Appellant has advanced no theory that would legally justify his statements to the trainees under the circumstances divined from the record. To the contrary, this record contains clear evidence that appellant's actions sufficiently qualify as wrongful conduct.

Similarly, there is sufficient evidence of record to permit a rational factfinder to conclude beyond a reasonable doubt that appellant believed Green's report to Bell would result in criminal investigation or proceedings, and that his actions evinced an intent to influence, impede, or otherwise obstruct the due administration of justice. After his conversation with SFC Bell, it would have been clear to appellant that Green and Mitchell were pursuing a complaint against him. Bell testified that he told appellant the trainees had "accused [him] of something very serious and that they want[ed] to file a report." We have held that obstructing justice can occur where the appellant "believed that some law enforcement official of the military . . . would be investigating his actions." United States v. Finsel, 36 MJ 441, 444 (CMA 1992).

Appellant, more than anyone, knew the criminal nature of his offense against Green. Unlike the situation encountered in Asfeld, appellant's offense had already been reported. From the

perspective of the trainees, by reporting the offense to SFC Bell, they had begun the process of vindicating the interests of the victim, PVT Green.  SFC Bell had taken action expressing official interest by confirming the serious nature of the allegation.  He had also indicated to the two trainees that they could expect to be required to execute sworn statements that, in his words, could "be used in a court of law."

While SFC Bell's testimony does not expressly state what duty to report such an offense he may have had, it does relate the considerable instruction he and other drill instructors received regarding personal relationships with trainees.  He understood that "[a]ny relationship that's not professional is considered improper association."  Moreover, he described his military specialty as "legal specialist."  This suggests that he might have been more aware than most that a criminal offense was being reported to him.  Furthermore, Prosecution Exhibit (PE) 2 is a Fort Jackson regulation entitled "PROHIBITED PRACTICES AND ILLEGAL AND UNPROFESSIONAL ASSOCIATIONS," and pertains to conduct between drill instructors and "soldiers-in-training." The regulation expressly indicates that it is punitive in nature and specifically proscribes "[t]ouching of a sexual nature, . . .caressing, . . .[and] sexual fondling" of soldiers-in-training. PE 2 at 6.

Based on this record, reasonable military court members could have determined that having received the complaint of a criminal assault upon one of his trainees, Bell had a duty to pursue the complaint on her behalf. Indeed, Bell testified that after terminating the meeting between appellant and the trainees in the lounge, he in fact reported the incident to the first sergeant. In light of the foregoing, we are satisfied that there is sufficient evidence of record from which rational factfinders could conclude guilt beyond reasonable doubt on the essential elements of both obstruction of justice offenses.

## ISSUE II

Appellant contends that the two obstructing justice specifications stem from a single act of communication made to the two Privates at the same time and place, i.e., the CQ lounge. Relying on United States v. Guerrero, 28 MJ 223 (1989), he argues that consolidation is required because only one offense rather than two occurred.

In Guerrero, after intentionally driving his car into a crowd of people and injuring several of them, the appellant drove away from the scene without stopping, rendering assistance, or making his identity known. After leaving the scene, he stopped the car and told the other two occupants in the car that they should lie to the military police and say that the car had been stolen. Appellant was convicted of two

specifications of obstructing justice, one for each occupant of the car. The factual findings of the court below demonstrated that both specifications resulted from a single act of communication by the appellant at the same time and place to both potential witnesses. We reasoned that the overriding concern of the obstructing justice provision in paragraph 96(b) of the Manual is the protection of the administration of justice in the military justice system, and not the protection of potential witnesses at courts-martial or other military investigations. Id. at 227. Accordingly, we held that under such circumstances, only one offense had occurred and ordered consolidation of the two specifications into one. Id.

We note that the trial testimony of Green and Mitchell does not establish with absolute clarity the timing of the two encounters appellant had with them following the meeting in the CQ lounge. Both witnesses testified the meeting in the CQ lounge occurred on April 12. Green testified that the meeting in the "breezeway" occurred less than two to three days later because "they took [appellant] off - - they took him away from 1/61." Mitchell testified that after she and Green met with SFC Bell, appellant had contact with her "two, maybe three times." This would include the meeting she testified to that occurred in appellant's office, which also had to have been before appellant was removed from 1/61.

15

Both specifications of obstructing justice alleged that the offenses occurred "on or about 12 April 1996." When the Government pleads an offense "on or about," it is "not required to prove the exact date, if a date reasonably near is established." United States v. Hunt, 37 MJ 344, 347 (CMA 1993). Here, the members were free to conclude that the offenses occurred between April 12 and two to three days later, when "they took [appellant] away from 1/61." Moreover, appellant would be required to show how, if at all, he was prejudiced by this variance. We note the record contains a bill of particulars in which trial defense counsel requests specificity on a number of the charges. However, neither of the obstruction specifications is included in the bill. Since counsel did not raise the issue of variance at trial, it is apparent the defense was not misled by this variance. Therefore, we hold the record supports a finding by a rational trier of fact that the offenses occurred "on or about" April 12, 1996.

Appellant also failed to move to consolidate the specifications for findings purposes. The only colloquy on the issue of consolidation took place after the members had returned findings of guilt in the case. The military judge asked both sides if they had familiarized themselves with Guerrero. Then both counsel agreed on the record with the military judge that

the two obstructions would be considered as one offense for sentencing.

Appellant now asserts that we should consolidate these two offenses for findings. However, such claims are forfeited by failure to make a timely motion to dismiss, unless they rise to the level of plain error. United States v. Heryford, 52 MJ 265, 266 (2000). Appellant has the burden of persuading us that there was plain error. United States v. Powell, 49 MJ 460, 464-65 (1998). We need not venture far into the analysis since we conclude that the military judge did not err by failing to consolidate the two offenses for findings purposes.

Appellant may show plain error and overcome forfeiture by showing that the specifications are facially duplicative. Id. at 266. Whether specifications are facially duplicative is determined by reviewing the language of the specifications and the "facts apparent on the face of the record." Id. (citing United States v. Lloyd, 46 MJ 19, 24 (1997); United States v. Harwood, 46 MJ 26, 28-29 (1997)).

As discussed above, each specification alleged an endeavor against a different individual "on or about 12 April 1996." While appellant attempts to confine the scope of the issue to only that which occurred in the CQ lounge, the facts apparent on the face of this record indicate there were at least three separate and distinct instances where appellant met with one or

both of them and endeavored to dissuade them from pursuing the complaint.  Significantly, Mitchell testified that during the meeting in appellant's office, appellant's statements to Green were consistent with his statements earlier in the CQ lounge.  However, her testimony that he asked her to "write a statement against Green" was qualitatively different from the statements directed at Green.  Thus, in the context of the meeting in the office, while appellant's statements were indeed made at the same time and place, they were distinctively different statements designed to thwart the administration of justice in distinctively different ways.  See United States v. Neblock, 45 MJ 191, 197 (1996).  Consequently, Guerrero is factually distinct from appellant's case, and consolidation is not required.  The appellant, having failed to carry his threshold burden of establishing error, there is no plain error and we hold that the two convictions may stand.[5]

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

[5] Having found no error, we need not address Senior Judge Sullivan's attempt to revisit Powell.

18

<u>United States v. Barner</u>, 00-0431/AR


SULLIVAN, Senior Judge (concurring):

I concur with the majority opinion on its overall legal analysis and write only to disassociate myself from its citation to <u>United States v. Powell</u>, 49 MJ 460 (1998).   In <u>Powell</u>, the plain error rule is defined as follows:


> Under a plain error analysis, appellant had the burden of persuading the court below that there was plain error. <u>Only after appellant met his burden of persuasion did the burden shift to the Government to show that the error was not prejudicial</u>. [*]

---

[*] It is significant that the majority opinion omits any discussion of this "burden shifting" aspect of the plain error rule delineated in <u>Powell</u>.  Even though as recently as September 19, 2001, at the 2001 William S. Fulton, Jr., Appellate Military Judges' Conference and Training Seminar in Washington, D.C., <u>Powell</u>, with its unusual shifting of burden to the Government to show prejudice, was cited as one of the leading cases of the plain error doctrine (<u>see</u> conference handout materials, <u>Standard of Review</u> at 15).

One is reminded of a similar incident of omission in the Sherlock Holmes story of "Silver Blaze," where a local police inspector was trying to get Sherlock Holmes's view of the evidence at the scene of a larceny:

> "Is there any other point to which you wish to draw my attention?"

> [Holmes replied] "To the curious incident of the dog in the night-time."

> [Police Inspector] "The dog did nothing in the night-time."

> "That was the curious incident," remarked Sherlock Holmes.

Daniel Stashower, <u>Teller of Tales - The Life of Arthur Conan Doyle</u> 131-32 (1999).

Id. at 464-65 (emphasis added).

This rule of Powell is flawed, as I explained in United States v. Wilson, 54 MJ 57, 60 (2000) (Sullivan, J., concurring in part and dissenting in part).  There should be no burden on the Government in plain error cases to show that the error was harmless in view of the outcome of the case.  That teaching in Powell should be expressly overruled because it established the most liberal plain-error rule in our country, although, since then our Court has apparently moved away from this unacceptable portion of Powell, sub silentio.  United States v. Tanksley, 54 MJ 169, 173 (2000).  See United States v. Kho, 54 MJ 63, 65 (2000) (Sullivan, J., concurring).