*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Jerard SIMMONS, Senior Airman
United States Air Force, Appellant

**No. 21-0069**

Crim. App. No. 39342

Argued October 6, 2021—Decided February 24, 2022

Military Judge: Patricia A. Gruen

For Appellant: *Captain David L. Bosner* (argued); *Captain Ryan S. Crnkovich* (on brief).

For Appellee: *Major John P. Patera* (argued); *Lieutenant Colonel Matthew J. Neil* and *Mary Ellen Payne*, Esq. (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS and Senior Judge ERDMANN joined. Judge HARDY filed a separate dissenting opinion, in which Judge MAGGS joined.

————————

Chief Judge OHLSON delivered the opinion of the Court.

## I. Overview

In July of 2017, a general court-martial consisting of officer members convicted Appellant, contrary to his pleas, of four specifications of sexual assault of a child, one specification of extortion, and one specification of producing child pornography, in violation of Articles 120b, 127, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 927, 934 (2012). Appellant was sentenced to a dishonorable discharge, confinement for twelve years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

Although finding no prejudicial error with respect to the assignments of error, the United States Air Force Court of Criminal Appeals (CCA) set aside the convening authority's action and directed new post-trial processing with conflict-free defense counsel. *United States v. Simmons*, No. ACM

39342, 2019 CCA LEXIS 156, at \*57, 2019 WL 1569722, at \*19 (A.F. Ct. Crim. App. Apr. 9, 2019) (unpublished). Following the convening authority's second post-trial review, the lower court affirmed the findings but, because of unreasonable post-trial delay, affirmed only so much of the sentence as provided for a dishonorable discharge, confinement for eleven years, eleven months, and twenty days, forfeiture of all pay and allowances, and reduction to the grade of E-1. *United States v. Simmons*, No. ACM 39342 (f rev), 2020 CCA LEXIS 356, at \*15–16, 2020 WL 5884137, at \*6 (A.F. Ct. Crim. App. Oct. 2, 2020) (unpublished).

Appellant timely appealed the decision of the CCA and this Court granted review of the following issue:

> Whether the military judge erred in allowing the Government to make a major change to a specification, over defense objection—almost tripling the charged time frame—after the complaining witness's testimony did not support the offense as originally charged and the prosecution had rested its case.

*United States v. Simmons*, 81 M.J. 232 (C.A.A.F. 2021) (order granting review).

We answer the granted issue in the affirmative. Specifically, we hold that under the totality of the circumstances presented here, enlarging the charged time frame of one of the offenses by 279 days—after arraignment and over defense objection—was "likely to mislead the accused as to the offenses charged." Rules for Courts-Martial (R.C.M.) 603(a).[1] This amendment to the charge sheet thus constituted a "[m]ajor change" which the Government was not authorized to make without withdrawing, amending, and preferring the specification anew. R.C.M. 603(a), (d). Because the Government failed to take these required steps, the decision of the CCA is reversed as to the Specification of Charge II and as to the sentence.

---

[1] The citations in this opinion are to the 2016 version of the *Manual for Courts-Martial, United* States (*MCM),* which is the version of the *MCM* applicable to this case.

## II. Facts

The issue before us centers on Appellant's conviction for extortion. The facts adduced at trial demonstrated that in 2012, when Appellant was a senior in high school, he took photographs of a fourteen-year-old freshman girl, CL, performing oral sex on him. In August 2013, Appellant joined the Air Force. Thereafter, Appellant threatened to post these photographs on social media unless CL continued to perform oral sex on him. CL then complied with Appellant's request.

Based on these facts, the Government charged Appellant with an Article 127, UCMJ, extortion offense as follows:

> In that [Appellant] did, within the Commonwealth of Virginia, between on or about 2 August 2014 and on or about 31 December 2014, on divers occasions, with intent unlawfully to obtain an advantage, to wit, the performance of oral sex upon [Appellant], communicate to [CL] a threat to publicize an image of [CL] performing oral sex on him.

On the Sunday evening preceding the week of the court-martial, the Government provided to the defense 252 pages of Facebook messages between Appellant and CL, which recently had been recovered from a dormant Facebook account. In one of the messages dated October 27, 2013, Appellant referred to his desire to have CL perform oral sex on him. When CL resisted the notion, Appellant responded: "Nah. I can get you to do it when I get back [to Virginia]. [winking emoji] Lol trust me on that." CL testified at the court-martial that Appellant was referring to blackmailing her with the photograph he previously had taken of her performing oral sex on him.[2] When Appellant returned to Virginia at the end of December 2013, CL performed oral sex on him at a local park near her home.

After the Government rested its case, it moved to amend the charge sheet so that the extortion specification would read

---

[2] In a separate exchange on Facebook, Appellant raised the issue of CL providing him with oral sex. She responded: "[W]ho said you were gonna get one." Appellant replied: "the pictures on my laptop." In another instance where CL refused to comply with Appellant's wishes, he threatened to "post pics to [Facebook]" unless she acquiesced.

that the offense occurred on divers occasions "between on or about 27 October 2013 and on or about 31 December 2014" rather than "between on or about 2 August 2014 and on or about 31 December 2014." This proposed change enlarged the charged period of the offense by 279 days. In support of the motion, assistant trial counsel stated that "evidence at trial has reflected that the start date of the timeframe of this offense should date back to 27 October 2013 to encompass the divers language as charged."[3]

The defense vigorously objected to the Government's motion, arguing that "during the government's case-in-chief, they failed to elicit any testimony that the extortion occurred during [the] time period [originally charged] . . . . And so the amendment here, this major change here, is made to cure a defect in their presentation of the evidence." The defense further stated: "Now our particular concern here, one, is of a notice type nature, particularly given that the government is moving to amend the charge sheet, . . . basically [just] before instructions [begin]." The civilian defense counsel also argued that "the dumping [of] 250 pages of text messages on me the night before trial, . . . hardly constitutes notice," and that he might have cross-examined the complaining witness differently if the Government had acted in a timely manner. In addition, the defense noted that by enlarging the charged time frame, the Government was now alleging that Appellant extorted CL when she was still a minor, and although age is not an element of the offense, her young age made the alleged offense "absolutely more serious" and could result in "an enhanced sentence." For these reasons, civilian defense counsel concluded, the Government's proposed amendment to the charge sheet was "highly prejudicial."

---

[3] In explaining the reason for initially using the August 2014 date on the charge sheet, the Government told the military judge that August 2, 2014, was CL's sixteenth birthday and "we could not charge an Article 120b [offense] once [CL] had turned 16. So after she had turned 16 we had charged for the continued course of conduct, an extortion charge under Article 127." The defense challenged this assertion, arguing that the Government originally used the August 2014 date in the charge sheet because CL had told agents from the Office of Special Investigations that the extortion occurred "in approximately September 2014."

In ruling on the motion, the military judge noted on the record that this was a "poorly charged case." She also made it clear that she was unhappy with the timing of the Government's motion. Nevertheless, she granted permission to the Government to amend the dates, concluding that the change was "minor" and that no substantial right of Appellant would be affected by the amendment. The panel members subsequently convicted Appellant of the extortion specification as amended. On appeal, the CCA affirmed this conviction. *Simmons*, 2020 CCA LEXIS 356, at \*16, 2020 WL 5884137, at \*6. We now must decide whether the military judge erred in granting the Government's motion. In doing so, we note that "[w]hether a change made to a specification is [major or] minor is a matter of statutory interpretation and is reviewed de novo." *United States v. Reese*, 76 M.J. 297, 300 (C.A.A.F. 2017).

### III. Applicable Rule

At the time Appellant's charges were referred to court-martial, R.C.M. 603 stated in its entirety:[4]

> (a) *Minor changes defined.* Minor changes in charges and specifications are any except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged.
>
> (b) *Minor changes before arraignment.* Any person forwarding, acting upon, or prosecuting charges on behalf of the United States except a preliminary hearing officer appointed under R.C.M. 405 may make minor changes to charges or specifications before arraignment.
>
> (c) *Minor changes after arraignment.* After arraignment the military judge may, upon motion, permit minor changes in the charges and specifications at any time before findings are announced if no substantial right of the accused is prejudiced.

---

[4] The current version of R.C.M. 603(b), contained in the 2019 edition of the *MCM* has a similar definition to distinguish between minor and major changes. The current R.C.M. 603(d) places limitations on the government's ability to make major changes after referral or a preliminary hearing.

(d) *Major changes.* Changes or amendments to charges or specifications other than minor changes may not be made over the objection of the accused unless the charge or specification affected is preferred anew.

These provisions of R.C.M. 603 give rise to two essential points bearing on the instant case. First, after arraignment, a *major* change may not be made to the charges and specifications over defense objection unless the charge is preferred anew. R.C.M. 603(d). Second, after arraignment but before findings are announced, a military judge may permit a *minor* change to the charges and specifications only if no substantial right of the accused is prejudiced. R.C.M. 603(c).

## IV. Discussion

Here, the Government obviously made a change to a charge and specification by amending the dates during which the extortion offense allegedly occurred. Therefore, the key question we must answer is whether this was a *major* change or a *minor* change. If it was a major change, because it was made after arraignment and over defense objection, and because the specification was not preferred anew as required by R.C.M. 603(d), this determination is dispositive of the issue before us. That is, the applicable provisions of R.C.M. 603 will compel us to conclude that the military judge erred by allowing the Government to make that major change.

### a. Parties' Arguments

Appellant primarily argues that the Government's amendment of the charge sheet constituted a major change because it expanded the covered dates "by an additional 279 days—almost tripling the charged timeframe." Brief for Appellant at 19, *United States v. Simmons*, No. 21-0069 (C.A.A.F. May 19, 2021). Appellant further asserts that the amendment of the extortion specification:

> [W]as a major change because: (1) the Defense was not on proper notice of the change; (2) the change surprised and misled the Defense and included substantial matters not necessarily included in the previous preferral in this case where dates were critical; and (3) the change created criminal liability for a charge after the presentation of the case when the

evidence actually presented was fatally deficient
and the Government knew it.

*Id*. at 32.

The Government, on the other hand, argues that the amendment to the extortion specification merely constituted a minor change. In doing so, the Government asserts that "[f]ederal courts have generally regarded amendments to the charged timeframe as a matter of form rather than substance." Brief for Appellee at 21, *United States v. Simmons*, No. 21-0069 (C.A.A.F. June 21, 2021). Further, the Government asserts that the following points demonstrate that the change to the specification in this case was not major: the "correction of the commencement date for the extortionate threats did not alter the means of committing the offense or implicate defenses available to Appellant"; the change "did not alter the punishment that could be imposed, and it did not implicate the statute of limitations"; and it "did not create any additional offenses." *Id*. at 22–23. The Government also claims that "Appellant received appropriate notice about the nature of the crime, his victim, and the location" and that "[c]orrecting the charged timeframe did not misle[a]d Appellant in any way." *Id*. at 22. Therefore, the Government avers, amending the dates "merely corrected a minor error in the pleading" and did not constitute a major change to the extortion specification. *Id*. at 23.

### b. Analysis

As noted above, the version of R.C.M. 603 that applied to Appellant's court-martial defines a "major change" indirectly. That is, we are required to infer from the rule that an amendment to a charge and specification constitutes a *major* change if it does *not* constitute a *minor* change. Specifically, R.C.M. 603(a) states that "[m]inor changes . . . are any *except* those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." (Emphasis added.)

We note that this list of exceptions is written in the disjunctive and, for purposes of this particular appeal, we deem it appropriate to focus solely on the last exception. Namely, based on the facts presented in this case, we will examine

whether the Government's action of expanding the charged time frame of the offense by 279 days was "likely to mislead the accused as to the offenses charged." R.C.M. 603(a).

R.C.M. 603 itself does not explain what aspects of an amendment, or what degree of change, would make it sufficiently likely that an accused would be misled as to violate the rule. Thus, in assessing the parties' contentions about the Government's change of dates in the instant case, we believe it is instructive to first turn to our precedents which, in a factual sufficiency context, analyze the issue of what constitutes "a [material] variance between the date of the offense charged and the date of the offense proven at . . . court-martial." *United States. v. Hunt*, 37 M.J. 344, 347 (C.M.A. 1993). We then can apply the principles contained in these "material variance" cases in the course of deciding whether, under the totality of the circumstances, changing the charge sheet after arraignment and over defense objection so as to expand the time frame of the alleged offense by 279 days was "likely to mislead . . . [Appellant] as to the offenses charged." R.C.M. 603(a).

This Court has consistently taken the position that "[t]he words 'on or about' in pleadings mean that 'the government is not required to prove the exact date [of an offense], if a date *reasonably near* is established.' " *Hunt*, 37 M.J. at 347 (quoting *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987)); *see United States v. Brown*, 34 M.J. 105, 110 (C.M.A. 1992) (" 'On or about,' . . . are words of art in pleading which generally connote any time within a few weeks of the 'on or about' date."), *overruled on other grounds by Reese*, 76 M.J. at 302. Stated differently, if an offense is charged "on or about" a specific date, any change by a factfinder that is reasonably near to the original charged date is not a material variance. *Hunt,* 37 M.J. at 347.

In terms of the application of this principle to specific facts in individual cases, this Court has held that "on or about" connotes a range of days to weeks. *United States v. Barner*, 56 M.J. 131, 137 (C.A.A.F. 2001) (a difference of "two to three days" was encompassed within the "on or about" language); *Hunt,* 37 M.J. at 347 (a three-week difference was not a material variance when the pleadings used the phrase "on or about"); *Brown*, 34 M.J. at 106, 110 (post-arraignment change

by seven days from "on or about 4 March" to "on or about 11 March" was a minor change).

It logically follows, then, that even after arraignment and even over defense objection, if the government moves to change a date on a charge sheet to a different date that is reasonably near to the original charged date, this action only constitutes a minor change and is authorized as long as "no substantial right of the accused is prejudiced." R.C.M. 603(c); *see United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003) (noting that "[m]inor variances, such as the location of the offense or the date upon which an offense is allegedly committed, do not necessarily change the nature of the offense and in turn are not necessarily fatal," especially where the government has made use of the "on or about" language in the charged specification).

A change that extends the charged time frame beyond this "on or about" window, however, *does* constitute a material variance. Once that determination is made, a totality of the circumstances analysis must then be conducted in order to determine whether that material variance resulted in a "major change" under R.C.M. 603 because, for example, the amendment was "likely to mislead the accused as to the offenses charged." R.C.M 603(a); *see, e.g.*, *United States v. Cochran*, 697 F.2d 600, 604 (5th Cir. 1983) ("In so deciding we eschew a simple count of days. The width of the time window opened by an on or about allegation cannot be abstractly measured."); *United States v. Reece*, 547 F.2d 432, 435 (8th Cir. 1977) (indictment alleging that defendant illegally possessed a check on October 1, 1975, rather than on the correct date of October 1, 1974, merely "contained a typographical error" that was harmless).

In adopting this analytical approach, we wish to highlight two points. First, we note that our reliance on our material variance case law means that we are not providing a crisp delineation between a period of time that falls within the ambit of the "on or about" language and a period of time that falls outside the ambit of the "on or about" language. That is intentional. We decline to impose a rigid and arbitrary time line that appears nowhere in the rule.

Second, we emphasize that nothing in this opinion needlessly impedes the government's ability to effectively prosecute offenses. There typically is a clear cut and relatively simple route the government can take when, after arraignment and over defense objection, it wishes to make major changes to the charge sheet—it merely needs to prefer the charges "anew." R.C.M. 603(d).

This point is perhaps best demonstrated by our decision in *United States v. Parker*. In *Parker* the military judge, prior to trial, denied the government's request to modify, over defense objection, the dates in the charge sheet from 1995 to 1993. 59 M.J. 195, 198 (C.A.A.F. 2003). The military judge in that case based his ruling on "the prohibition against major changes in R.C.M. 603." *Id.* at 201. However, the panel members later used exceptions and substitutions to expand the date range of the rape and adultery charges by nearly two years, similar to what the government had previously sought. *Id.* at 200. We found reversible error. *Id.* at 201.

We explained in *Parker* that after the military judge denied the request for a major change, the trial counsel had two options. The government either could have proved that the offenses took place in the charged time frame of 1995, or "the Government could have addressed the disconnect between pleading and proof through withdrawal of these charges and preferral of new charges for consideration in the present trial or in a separate trial. *See* R.C.M. 603(d)." *Id.* Because the government pursued neither of these options, this Court in *Parker* held that the military judge erred in denying the motion for a finding of not guilty under R.C.M. 917. *Id.*

In regard to the extortion specification at issue in the instant case, we note that the Government changed the time frame of the alleged offense by adding 279 days. The extent of this change far exceeds any permissible variance we have previously recognized in our material variance case law. *See, e.g.*, *Barner*, 56 M.J. at 137; *Brown*, 34 M.J. at 106; *Hunt* 37 M.J. at 347. Moreover, we find no other basis to conclude that the amended dates should be viewed as being "reasonably near" to the original charged dates. *Barner*, 56 M.J. at 137 (citation omitted) (internal quotation marks omitted).

In terms of the totality of the circumstances presented here, we begin by noting that the timing of the amendment is highly concerning. The Government sought to amend the charge quite literally in the middle of trial, after it had rested its case. *Simmons*, 2019 CCA LEXIS 156, at \*35, 2019 WL 1569722, at \*12. We pointedly reject the contention by the Government that, as a general rule, it is "reasonable for the government to wait until [a victim] testifie[s] before deciding whether the dates of the charged offense[s] need[] to be corrected based upon the evidence adduced at trial." Brief for Appellee at 40, *United States v. Simmons,* No. 21-0069 (C.A.A.F. June 21, 2021). This cavalier approach to investigating, charging, and preparing a court-martial case is inconsistent with the government's due process notice obligations toward an appellant, as well as the tenets of fair play inherent in the military justice system. As we recently and unanimously stated in *Reese*, "[*t*]*he defense* [*is*] *entitled to rely on the charge sheet* and the government's decision not to amend the charge sheet prior to trial." 76 M.J. at 301 (emphasis added); *see also Dunn v. United States*, 442 U.S. 100, 106 (1979) ("Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused.").

We next note that the Government's amendment to the charge sheet made it so that the charged extortion dates preceded the charged sexual assault dates, thereby enabling the Government to argue that the sexual assault was accomplished via extortion. Indeed, the Government made this precise point in closing, relying on evidence that would have been outside the temporal scope of the extortion specification as originally charged:

> 27 October 2013 . . . . What does he say? "My dick wants to talk to your mouth again. . . . I can get you to do it when you [sic] get back to Virginia, trust me." Now, what does that show? That shows his intent to blackmail her. He will get her to perform oral sex. *It also shows that she doesn't want to do it, and he'll blackmail her to get her to do it*. . . . And you heard [CL] said [sic] that she performed oral sex on him one maybe more times during that break.

(First [sic] in original.) (Emphasis added.) And importantly, civilian defense counsel averred at trial that this amendment

to the charges arguably increased the seriousness of the offenses with which Appellant was charged.

We conclude that this change in the Government's theory of the case, which was directly predicated on—and inextricably linked with—the amended dates in the charge sheet likely misled the accused as to the offenses which he needed to defend against. Specifically, the change in dates likely affected the investigation the defense team otherwise might have conducted, the type of evidence they otherwise might have introduced, and the nature of the cross-examination they otherwise might have conducted. Therefore, under the totality of the circumstances present here, we conclude that the Government's action of amending the charged dates of the extortion offense by 279 days constituted a major change. And because the Government made this major change after arraignment, over defense objection, and without preferring the charges anew, the military judge erred in authorizing the Government to take this step.[5] Thus, this change in dates was impermissible, and accordingly, the extortion specification as amended "has no legal basis" and must be dismissed. *Reese*, 76 M.J. at 301.

### V. Conclusion

"The military is a notice pleading jurisdiction." *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011). Stating on a charge sheet the date of an alleged offense with a certain degree of specificity and accuracy is required. Moreover, such a step is essential to the fundamental fairness of the criminal

---

[5] This Court recently held in *United States v. Stout* that "Article 34, UCMJ, specifically allows the [g]overnment to make changes to the charges and specifications to bring them into alignment with the evidence adduced by the pretrial investigation." 79 M.J. 168, 170 (C.A.A.F. 2019); *see* Article 34(c), UCMJ, 10 U.S.C. § 834(c) (2018) ("Before referral for trial by general court-martial or special court-martial, changes may be made to charges and specifications— (1) to correct errors in form; and (2) when applicable, to conform to the substance of the evidence contained in a report under section 832(c) of this title . . . ."). However, as both parties recognize, that case and article are inapposite. The changes to the charges and specifications in *Stout* were made "[p]rior to referral." 79 M.J. at 169 (emphasis added). In the instant case, the changes were made *after* referral. Therefore, Article 34, UCMJ, does not apply here and is not a factor in our analysis.

justice process because it provides an accused with adequate and proper notice of the government's proffer of evidence, and thereby informs the accused of what he or she needs to defend against at trial. In this context, we note that it is the government that controls the charge sheet from the inception of the charges through the court-martial itself. There are rules that govern when and how the government may amend the charges and specifications. The government does not have authority to ignore those rules simply because they are inconvenient. Accordingly, it is the government that has both the opportunity *and the responsibility* to ensure that the dates in the charges and specifications align with the facts of the case so that an accused is not misled as to the offenses charged.

## VI. Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed as to the Specification of Charge II and as to the sentence. The findings for this specification and charge are set aside and the specification and charge are dismissed. The sentence is also set aside. The remaining findings are affirmed. The record is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals to either reassess the sentence or to order a sentence rehearing.

Judge HARDY, with whom Judge MAGGS joins, dissenting.

The majority concludes that the Government's 279–day amendment to the extortion charge was a major change to the charge sheet under Rule for Courts-Martial (R.C.M.) 603(a) (2016 ed.), and therefore impermissible under R.C.M. 603(d) (2016 ed.). The majority reaches this conclusion through the novel application of a totality-of-the-circumstances test borrowed from the Court's material variance precedents. Although I sympathize with the Court's desire to find reversible error based on the Government's actions, I believe that the majority's innovative approach disregards long-standing precedent about how this Court distinguishes major and minor changes to charge sheets. For that reason, I respectfully dissent.

In my view, the military judge did not err in permitting a 279-day amendment to the extortion charge because the change does not qualify under our precedent as a major change under R.C.M. 603(a) (2016 ed.). While I can see a policy argument that R.C.M. 603 (2016 ed.) as written is perhaps overly generous in granting the Government broad discretion to change the charge sheet late in trial proceedings, Appellant has not challenged that rule—or our past decisions interpreting it—as being inconsistent with any statutory law or violating the Constitution's guarantee of due process. I therefore find myself bound to the text of the rule and this Court's precedent, which lead me to conclude that the 279-day amendment was a minor change that did not mislead Appellant as to the offenses charged or prejudice any of his substantial rights.

## I. Analysis

Whether a change made to the charge sheet is major or minor is a question of statutory interpretation that this Court reviews de novo. *United States v. Reese*, 76 M.J. 297, 300 (C.A.A.F. 2017).

Rule for Courts-Martial 603(c) (2016 ed.) states that after arraignment, the military judge has the discretion to permit minor changes to the charge sheet "*any time* before findings are announced if no substantial right of the accused is prejudiced." (emphasis added). The rule defines a minor change as

any change in the charges "except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." R.C.M. 603(a) (2016 ed.). The majority concludes that the change in this case qualifies as a major one because it was "likely to mislead the accused as to the offenses charged." I disagree.

## A. Changes Likely to Mislead the Accused

Neither the text of R.C.M. 603 (2016 ed.) nor the associated discussion of that rule in the *Manual for Courts-Martial, United States* (*MCM*) (2016 ed.), provide any guidance about when a change to the charge sheet is "likely to mislead the accused as to the offenses charged." Nevertheless, whether such a change is likely to mislead the accused as to the offense charged is not a novel question for this Court. In 1954, this Court's predecessor considered that very question in *United States v. Brown*, 4 C.M.A. 683, 688, 16 C.M.R. 257, 262 (1954), in the context of then-Article 34(b), UCMJ, Act of May 5, 1950, ch. 169, § 1, 64 Stat. 119 (repealed 1956).

At that time, then-Article 34(b), UCMJ, authorized the convening authority, after the preferral of charges, to make "formal corrections, and such changes in the charges and specifications as are needed to make them conform to the evidence." *Brown,* 4 C.M.A. at 685–86, 16 C.M.R. 259–60. Foreshadowing the words of R.C.M. 603(a) (2016 ed.), the *MCM* further explained that, "the charges may be redrafted over the accuser's signature, provided the redraft does not include any *person*, *offense*, or *matter* not fairly included in the charges as preferred." *Id.* at 686, 16 C.M.R. at 260 (internal quotation marks omitted) (quoting *MCM* ch. VII, para. 33.*d* (1951 ed.)).

In *Brown*, the convening authority amended the relevant specification to allege the commission of an offense "on or about 1 March 1951," rather than "on or about 13 June 1951." *Id.* at 684, 16 C.M.R. at 258 (internal quotation marks omitted). The appellant challenged the amendments as violating then-Article 34(b) because "the amended specification designated a crime quite different from that comprehended in the original" specification. *Id.* at 685, 16 C.M.R. at 259. Finding

2

the appellant's argument to be "strikingly similar" to one pre-
sented by a habeas petitioner in a state-court case from Cali-
fornia, our predecessor similarly rejected the argument and
adopted the California court's reasoning as the "modern view"
on the subject. *Id*. at 687, 16 C.M.R. at 261 (citing *In re Davis*,
56 P.2d 302, 303–04 (Cal. Dist. Ct. App. 1936)). Quoting *Da-
vis*, our predecessor noted:

> The mere changing of the alleged dates of the
> crimes . . . , does not have the effect of charging dif-
> ferent offenses, nor does it amount to the filing of a
> new information. . . . It is evident that the mere
> change of the alleged dates of the particular offenses
> relied upon would add no burden or prejudice the de-
> fendant in the presentation of whatever defense he
> may have had.

*Id.*, 16 C.M.R. at 261 (quoting *In re Davis*, 56 P.2d at 303–04).

One might argue that *Brown* should not guide our analy-
sis of the question presented in this case because of the differ-
ences between the text of then-Article 34(b) and the associ-
ated paragraphs in the 1951 *MCM* versus the 2016 text of
R.C.M. 603. The most significant difference for the purpose of
this case is that R.C.M. 603(a) (2016 ed.) designates changes
to the specifications "which are likely to mislead the accused
as to the offenses charged" as major changes while 1951 *MCM*
did not. But when expressly asked whether *Brown* was rele-
vant to this case at oral argument, Appellant's counsel stated
that it was and argued that the legal principles presented in
that opinion supported Appellant's position even though
counsel found it factually distinguishable.

Indeed, it makes sense to apply *Brown*. Although the 1951
*MCM* did not expressly prohibit changes to the specifications
over the signature of the accuser that were likely to mislead
the accused as to the offenses charged, the decision in *Brown*
still considered whether the changes to the specification dates
in that case did so. The Court held:

> Where time is of the essence of the crime, allega-
> tions concerning the date of the offense become mat-
> ters of substance. For example, the date of the of-
> fense would doubtless be of substance in a
> prosecution for violating a Sunday "blue law," or pos-
> sibly in a prosecution for statutory rape. In these in-
> stances, amendments which would have the effect of

> charging the accused with an additional offense, or
> of changing the nature of the crime alleged, are not
> permitted. On the other hand, where time is not of
> the essence, it is the general rule that an erroneous
> statement of the date of the offense constitutes a
> matter of mere form, and amendments are freely
> permitted where they do not operate to change the
> nature of the crime charged, and *there is no showing
> that the defendant had been misled* or prejudiced in
> his defense on the merits.

*Brown*, 4 C.M.A. at 687–88, 16 C.M.R. at 261–62 (emphasis
added) (citations omitted).

Applying its holding to the facts in that case, the *Brown*
Court concluded that there was not "the slightest suggestion
in the record that the amendment *misled* the accused as to
the nature or identity of the offense against which he was re-
quired to defend." *Id.* at 688, 16 C.M.R. at 262 (emphasis
added); *see also id.*, 16 C.M.R. at 262 ("[T]here can be no ques-
tion that the accused was not *misled* or prejudiced in his de-
fense on the merits." (emphasis added)). I thus see no reason
why *Brown* would not control our analysis in this case. *See
United States v. Stout*, 79 M.J. 168, 174 (C.A.A.F. 2019)
(Maggs, J., concurring in the judgment) ("Changes to the
*MCM* since *Brown* was decided also have not rendered *Brown*
obsolete.").

Applying *Brown*, I do not believe the change to the charge
sheet was likely to mislead Appellant as to the offenses
charged against him. In *Brown*, the Court found that the ac-
cused could not claim that he had been misled or prejudiced
in his defense on the merits due to four factors. First, the ac-
cused was fully informed of the facts that "overtly foreshad-
owed" the changes subsequently made by the government. 4
C.M.A. at 688, 16 C.M.R. at 262. Second, the accused failed to
request a continuance. *Id.*, 16 C.M.R. at 262. Third, there was
"no fundamental change of tactics . . . necessitated by the
amendments." *Id.*, 16 C.M.R. at 262. And, finally, there was
no need for the accused to "construct his defense anew." *Id.*,
16 C.M.R. at 262. All of those factors are present in this case
as well.

Here, like the accused in *Brown*, Appellant was not misled
by the amended time frame. Appellant became aware of the
earlier Facebook messages that "overtly foreshadowed" the

eventual changes to the extortion charges as soon as those messages were entered into evidence. While no one condones the Government's failure to notify Appellant about the messages earlier, there is no evidence that the late notice hindered Appellant's defense. To the contrary, Appellant's counsel effectively crossed the victim on the substance of many of the earlier Facebook messages. This indicates that Appellant's counsel understood that those earlier Facebook messages suggested that Appellant began extorting the victim months earlier than the charges originally stated. Appellant's argument that he was misled by the changes is undermined further by the fact that once the military judge permitted the Government's proposed changes, Appellant never requested a continuance. Indeed, in response to a direct question from the military judge about what impact, if any, the changes would have on Appellant's substantial or due process rights, Appellant's counsel failed to articulate any specific way the changes would have altered his trial tactics or how the changes resulted in him needing to construct his defense anew. Appellant's counsel briefly suggested he may have crossed the victim differently had he known about the extended dates, but he ultimately chose not to re-cross her at all. Here, applying the same considerations from *Brown*, Appellant failed to demonstrate he was misled by the amended time line.

### B. Minor or Major Change

Having concluded that the amended charges were not "likely to mislead the accused as to the offenses charged," I next consider whether the changes qualified as major due to one of the other factors listed in the rule. *See* R.C.M. 603(a) (2016 ed.) (defining major changes indirectly as those that "add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged"). I conclude that they do not.

First, the amended dates did not add a party or a new offense. Appellant was charged with extortion under Article 127, UCMJ, 10 U.S.C. § 927 (2012), both before and after the amendment. Neither the date of the offense nor the age of the

victim is an element of extortion.[1] And extortion is unlike a prosecution for violating a Sunday "blue law" or for statutory rape where time is the essence of the crime. *Brown*, 4 C.M.A. at 687, 16 C.M.R. at 261.

Second, the amendments did not include substantial matters not fairly included in the original charge sheet. For example, courts have held changes to the charges introduced new substantial matters when the changes altered the means of committing the offense, enhanced the defendant's sentencing exposure, or denied the defendant notice of a proper defense. *See Reese*, 76 M.J. at 301 (means and defenses); *United States v. Murray*, 43 M.J. 507, 511 (A.F. Ct. Crim. App. 1995) (sentencing exposure).

In *Reese*, after a child gave testimony that did not align with the charged conduct, the relevant charge language was changed from "licking" to "touching" to conform to the victim's testimony. 76 M.J. at 299. This Court held that this constituted a major change for two reasons: (1) the change altered the *means* of committing the offense; and (2) the appellant was denied proper notice because of the "different nature of the two offenses and the dissimilar defenses available for each." *Id.* at 301. For example, if the accused had prior notice that the charge was "touching" instead of "licking," he might have prepared an argument that the "touching" could have been accidental, an argument he could not reasonably make when the charge was "licking." *Id.*

Similarly, in *Murray*, where the amendment changed the charge from bludgeoning a woman with a loaded firearm to pointing the loaded gun at the woman and beating her with it in a way likely to produce death or grievous harm, the United States Air Force Court of Criminal Appeals held the change was major because it "alleged a new means" of committing the aggravated assault. *Murray*, 43 M.J. at 510. In *Murray*, the court also held the change was major because the

---

[1] "Any person subject to this chapter who communicates threats to another person with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity is guilty of extortion and shall be punished as a court-martial may direct." Article 127, UCMJ.

new charges increased the appellant's maximum sentence exposure by five years. *Id.*

Here, the changes did not create substantial matters not fairly included in the original charges for three reasons. First, the amended time line left the means of the extortion unchanged. Both before and after the changes, the Government charged Appellant with threatening to post illicit pictures of the victim to the internet unless she engaged in sexual conduct with Appellant.

Second, the changes did not enhance Appellant's sentencing exposure. Appellant argued the changes aggravated the Article 120b, UCMJ, 10 U.S.C. § 920b (2012), charge because under the new charges the sexual act was extorted rather than consensual, thereby increasing Appellant's sentencing exposure. But this argument has no merit because, as Appellant concedes, consent is neither a defense nor an element for an Article 120b, UCMJ, offense and the absence of consent does not increase the maximum punishment for committing an Article 120b, UCMJ, offense. *See* Article 120b(g), UCMJ, 10 U.S.C. § 920b(g) (2012) ("Lack of consent is not an element and need not be proven in any prosecution under this section."); Joint Appendix at 150, *United States v. Simmons*, No. 20-0069 (C.A.A.F. May 25, 2021)."Well, [consent is] not an element . . . ."). Although Appellant's counsel expressed concern that the Government might argue that the victim's younger age during the earlier time frame (fifteen years old instead of sixteen years old) was an aggravating factor during sentencing, the Government disclaimed any intent to do so and did not do so. We thus need not decide in this case whether or the extent to which R.C.M. 603(a) restricts amendments that do not change any offense but that enable the Government to make additional arguments at sentencing.

Third, Appellant argues he was denied a defense: that the Government failed to prove their case on the originally charged dates. This argument is unpersuasive because Appellant can only rely on the charge sheet to the extent the R.C.M. allows him to, which is to the extent that no major changes are made to them. As a result, the amended charge sheet did not include substantial matters not fairly included in the original charges, and the amendment of the dates of the charged extortion was a minor change.

### C. Prejudice

Under R.C.M. 603(c) (2016 ed.), minor changes are only allowed if they do not prejudice any of Appellant's substantial rights. But as this Court appeared to recognize in *Brown*, the analysis for prejudice is frequently indistinguishable from the analysis for evaluating whether an appellant was misled by the changes. 4 C.M.A. at 688, 16 C.M.R. at 262 (analyzing simultaneously whether the accused was misled by the changed dates and whether the changes had prejudiced his defense on the merits).

In this case, Appellant's counsel promptly objected when the Government moved to amend the charge dates. But during the subsequent motions hearing, Appellant's counsel did not request a continuance, articulate how the changes necessitated a change of tactics, or explain how the changes fundamentally altered Appellant's defense in a way that required him to start anew. At best, Appellant's counsel hedged that earlier notice of the changes "*could have* resulted in more cross-examination" of the victim. Joint Appendix at 153, *United States v. Simmons*, No. 20-0069 (C.A.A.F. May 25, 2021). (emphasis added). This speculative argument cannot establish prejudice considering that Appellant's counsel had the opportunity to recall the victim to the stand for further cross-examination but declined to do so—likely because he had already sufficiently questioned her about the dates of the extortion and the new Facebook messages.

Although Appellant did not receive the Facebook messages that "overtly foreshadowed" the amended charges until the weekend before trial, Appellant did have other notice that the evidence indicated that the extortion started earlier. Evidence introduced at the Article 32, UCMJ, 10 U.S.C. § 832 (2012), hearing indicated the extortion began as early as September 2013, six months earlier than the dates in the original charges. Although the Government gave Appellant no advance warning of its intention to amend the charges, this fact—standing in light of the other circumstances—is insufficient to prove prejudice.

### II. Conclusion

In R.C.M. 603, the President granted the government broad authority to make minor changes to the charges and

specifications at any time prior to the announcement of findings. Since 1954, this Court has held that minor changes include changes to the dates of the offense when time is not of the essence of the crime, the amendments do not change the nature of the crime charged, and there is no showing that the accused has been misled or prejudiced with respect to his substantial rights. *Brown*, 4 C.M.A. at 687–88, 16 C.M.R. 261–62. Appellant has not challenged the continued validity of that decision. Because the 279-day amendment to the charge sheet was not likely to mislead Appellant as to the charges against him, and did not include substantial information not fairly included in the original charge sheet, I do not believe that it was a major change for the purposes of R.C.M. 603. Instead, the change was a minor one under the rule, which did not prejudice any of Appellant's substantial rights. Accordingly, I do not believe that the military judge erred in granting the Government's motion to amend the dates. For that reason, I respectfully dissent.